IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MARQUIS JOHNSON,<br><br>  Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU, JACOB D. MECHAM, Police Officer, *et al.*,<br><br>  Defendants. | Case No. 22-cv-00447-DKW-RT<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** |

Plaintiff Marquis Johnson alleges various civil rights violations and tort claims arising out of force used against him in Waikiki in August 2020 by Honolulu Police Department ("HPD") Officer Jacob D. Mecham. Dkt. No. 1-2. Before the Court is a motion to dismiss ("MTD") Johnson's federal claims filed by Mecham's employer, the City and County of Honolulu ("City").[1] Dkt. Nos. 6–6-1. As explained below, because Johnson's federal claims against the City lack facial plausibility and otherwise do not state a claim, the MTD is GRANTED, albeit with leave to amend.

---

[1] Unlike the City, it appears that Mecham has yet to be served.

1

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" are insufficient. *Id*. at 679. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555) (explaining that "legal conclusions" are not accepted as true).

## RELEVANT FACTUAL ALLEGATIONS

Near midnight on August 22, 2020, an unnamed HPD officer noticed two African-American males in the vicinity of a parked, black Mercedes Benz vehicle

("Vehicle") in front of 427 Kalaimoku Street in Waikiki.  Dkt. No. 1-2 ("Complaint") ¶ 12.  The officer conducted a license plate check and discovered that the Vehicle had been reported stolen.[2]  *Id.* ¶ 13.  As the officer did so, Johnson, also an African-American male—without any connection to the other two men—passed nearby on foot.  *Id.* ¶¶ 9, 16, 21, 26.

The unnamed officer stopped all three men, ordering them to the ground in a prone position with their hands away from their bodies.  *Id.* ¶ 16.  The officer searched Johnson and handcuffed him.  At the same time, a second HPD officer arrived and detained the other two men.  *Id.* ¶¶ 19–20, 22.  Although Johnson complained of shoulder pain because the handcuffs were too tight, no adjustment of the handcuffs occurred.  *Id.* ¶ 23–24.  An officer then placed Johnson in a seated position facing the street with his legs in front.  *Id.* ¶ 25.

As Johnson sat on the sidewalk, uncertain as to the reason for his detention, HPD officer Jacob D. Mecham arrived on scene.  *Id.* ¶ 28.  Mecham exited his vehicle, told the other officers on scene to "move" out of his way, and, without provocation, drove his knee into the detained Johnson's back, forcing him to the ground.  *Id.* ¶ 29.  Johnson instantly felt pain, which he reported to Mecham.  *Id.* ¶ 30.  Unrelenting, Mecham continued to drive his knee into Johnson while

---

[2] The Complaint alleges that the unnamed officer was influenced by racial bias, having only conducted the license plate check because he saw two African-American men near the Vehicle. Dkt. No. 1-2 ¶¶ 17–18.

searching him, even though Johnson had already been searched by another officer. *Id.* ¶ 31.  Johnson repeatedly denied having any weapons or guns in response to Mecham's questions.  *Id.* ¶¶ 32–33.  Despite that, and continuing to drive his knee into Johnson's back, Mecham lifted Johnson by the handcuffs, causing further shoulder pain.  *Id.* ¶ 34.  Mecham then propped Johnson back to a seated position on the sidewalk and told him to shut up and not to look at the other two detainees. *Id.* ¶ 35.

Throughout this interaction, Mecham's Body-Worn Camera ("BWC") was not turned on, in violation of HPD policy.  *Id.* ¶ 37.  HPD Policy provides, "Officers shall activate BWC when the officer: a) Responds to a call for service; or b) Initiates a law enforcement or investigative encounter between himself or herself and a member of the public."  *Id.* ¶ 62 (quoting HPD Policy No. 2.57, Section B(1), "Body Worn Cameras").

While detained, Johnson repeatedly asked the officers the reason for his detention.  *Id.* ¶¶ 36, 42–44.  He alleges that several reasons were given: 1) he was seen by one of the HPD officers getting out of the stolen Vehicle; 2) as a Black male, he fit the description of the individuals seen in the Vehicle; 3) he was walking in the area; 4) HPD officers wanted to make sure he was not part of the crime since the Vehicle was reported stolen; and 5) even though a witness told

officers that Johnson was an innocent bystander, the officer told Johnson, "You got detained, so be it." *Id.* ¶¶ 42–44.

Eventually, after realizing that Johnson had no connection to the Vehicle or the other two detainees, the officers released Johnson. *Id.* ¶¶ 45–46. Johnson later called Emergency Medical Services ("EMS"), complaining of back and shoulder pain. *Id.* ¶ 47. EMS photographed the red markings on Johnson's back, discouraged him from going to the emergency room, and recommended he visit a specialist if the pain persisted. *Id.* ¶ 48. Johnson complied and went home. *Id.* ¶ 49.

Upon arriving at home, Johnson's back stiffened, and his jaw and the side of his neck locked up. *Id.* ¶ 49. Around 2:30 a.m. on August 23, 2020, he visited the emergency room at Kapiʻolani Medical Center ("KMC"). *Id.* ¶ 50. While there, medical personnel characterized his injuries as having been caused by physical assault. *Id.* ¶ 51. Johnson returned to KMC later the same day for a follow-up visit and had subsequent appointments at Straub Medical Center on September 15 and 17, 2020, all due to the pain in his head, neck and shoulders. *Id.* ¶¶ 52–53. Johnson claims he sustained "severe injuries" from Mecham's assault. *Id.* ¶ 72.

On September 1, 2020, Johnson submitted a notarized written complaint to the Honolulu Police Commission ("HPC"), triggering an investigation. *Id.* ¶¶ 54–55. HPC concluded that Mecham's recollection was inconsistent with

photographic and video footage of the event and generally unreliable. *Id.* For example, although Mecham stated that "at no time did he throw Mr. Johnson to the ground and kneel on him," body camera footage from other officers depicted the contrary. *Id.* ¶ 70-71. Mecham further claimed that he had "forgot[ten]" to turn on his BWC in accordance with HPD policy "because it was a high stress call and []he wasn't supposed to be there in the first place." *Id.* ¶ 61.

Johnson alleges that HPD has "a long history of its officers and agents using excessive force on detainees and criminal suspects," and "a long-standing policy or practice of allowing its officers and agents to abuse their authority over suspects and detainees." *Id.* ¶¶ 75, 78–79. Johnson further alleges that HPD "has not rectified" these practices and has "an official practice," and/or "a longstanding practice or custom" of "condoning" such behavior. *Id.* ¶¶ 78–79.[3][4] He also claims that HPD has a pattern or unofficial practice of "failing to train police officers to provide immediate medical assistance after a citizen has been beaten by the police." *Id.* ¶ 87. And he claims that HPD has a pattern or unofficial practice of "not supervising[, ] disciplining[, and/or investigating] police officers who violate citizens' civil rights by use of excessive force." *Id.* ¶¶ 89, 91. Johnson states that HPD's history of "condoning" these unofficial practices and customs "is reflected

---

[3] Johnson cites to no "official" HPD policy to this effect. *See* Complaint ¶¶ 78–79.
[4] Johnson also alleges that the HPD has "a long-standing policy or practice of allowing its officers and agents to abuse their authority over suspects and detainees." *Id.* ¶ 75.

in the numerous lawsuits filed against HPD officers for excessive force used against suspects and detainees." *Id.* ¶¶ 73–74, 76–77.  Finally, Johnson alleges that HPD's actions on August 22, 2020 were caused by and in furtherance of these unlawful customs and failures to train.  *Id.* ¶ 83.

## RELEVANT PROCEDURAL BACKGROUND

On August 17, 2022, Johnson filed a Complaint against the City and Mecham in the Circuit Court for the First Circuit of the State of Hawaiʻi, alleging the following counts:

> **Count 1:** Excessive use of force in violation of the Fourth and Fourteenth Amendments, against Mecham;
>
> **Count 2:** Abuse of authority and failure to supervise in violation of the Fourteenth Amendment, against the City;
>
> **Count 3:** Deliberate indifference in violation of the Fourteenth Amendment, against the City;
>
> **Count 4:** Pattern of conduct in violation of the Fourteenth Amendment, against the City;
>
> **Count 5:** Negligence, against Mecham and the City;
>
> **Count 6:** Assault and battery, against Mecham and the City;
>
> **Count 7:** Intentional infliction of emotional distress, against Mecham and the City; and
>
> **Count 8:** Negligent infliction of emotional distress, against Mecham and the City.

*Id.* ¶¶ 84–100.  Counts 1–4 are brought pursuant to the stated U.S. Constitutional amendments and 42 U.S.C. § 1983 ("Section 1983"),[5] while Counts 5–8 are brought pursuant to Hawaiʻi state law.

On October 13, 2022, the City removed the case to this Court, Dkt. No. 1, and on November 1, 2022, filed the instant MTD, contending that the federal municipal liability claims, Counts 2–4, are not adequately pled and/or fail as a matter of law.  Dkt. No. 6-1 at 2.  In particular, the City explains that, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a local government may only be liable for an injury pursuant to Section 1983 under one of three theories: (i) policy or custom, (ii) failure to train, and/or (iii) ratification.  *See generally id.*  Noting first that Johnson's Complaint does not attempt to state any claim under a ratification approach, *see id.* at 12, the City contends that Johnson's claims under the first two theories have not been adequately pled and should be dismissed as a matter of law.  *Id.* at 6–7.  The City further requests that the Court decline to exercise supplemental jurisdiction over the remaining state law-based claims, Counts 5–8.  *Id.*

---

[5]To establish a Section 1983 claim, a plaintiff must plead that "(1) the defendants acting under color of state law (2) deprived plaintiff[] of rights secured by the Constitution or federal statutes." *Williams v. California*, 764 F.3d 1002, 1009 (9th Cir. 2014) (quoting *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)).  Johnson's Section 1983 claims meet this standard because they allege violations of constitutional or federal rights by persons acting under color of state law.

On December 2, 2022, Johnson opposed the MTD, contending that his *Monell* claims under the first two theories are adequately pled. *See* Dkt. No. 11 at 6–10. In so arguing, Johnson cites to a long-outdated pleading standard, asserting that "[a] claim may be dismissed only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 6 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). The "no set of facts" pleading standard does not reflect current law; it pre-dates *Twombly* and *Iqbal*, which substituted the "plausibility pleading" standard articulated in this Order, *supra*.[6]

Following briefing, the Court elected to decide this matter without a hearing, pursuant to Local Rule 7.1(c), *see* Dkt. No. 14, and this Order follows.

## DISCUSSION

Although his federal claims against the City are not labeled clearly in Counts 2–4, the City is correct that Johnson only attempts to bring *Monell* claims under (i) policy or custom, and (ii) failure to train theories. *See generally* Complaint; Dkt. No. 11 (Johnson's opposition brief, discussing only these two theories); *Monell*, 436 U.S. at 658. As explained more fully below, both theories lack sufficient

---

[6]The City identifies this legal error in its December 9, 2022 reply. Dkt. No. 12 at 2–3 (The Supreme Court in *Twombly*, 550 U.S. at 563–64, retired the "no set of facts" standard."). Although the "no set of facts" standard still applies in Hawaiʻi state court, *see Bank of Am., N.A. v. Reyes-Toledo*, 428 P.3d 761, 769, 774–75 (Haw. 2018), the state standard does not apply once a state case has been removed to federal court.

factual matter to permit anything but an inference of "the mere possibility of misconduct." *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. In fact, aside from providing the details of his own experience with HPD in August 2020, Johnson has provided *no* facts in support of his *Monell* claims.

A local government violates *Monell* under Johnson's first theory if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed a constitutional] injury." *Monell*, 436 U.S. at 694. A "practice or custom means any permanent, widespread, well-settled practice or custom that constitutes a standard operating procedure of the defendant." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1229 (9th Cir. 2011). The existence of such a standard operating procedure may be proven by evidence of an official policy, or by "evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). "Proof of random acts or isolated events is insufficient to establish custom." *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995).

A local government violates *Monell* under Johnson's second theory if it "fail[s] to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional

rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018) (citation omitted). Municipal liability may only be imposed when the failure to train reflects a "deliberate or conscious choice." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Given these principles, a plaintiff seeking to impose municipal liability for failure to train must show: "(1) an inadequate training program, (2) deliberate indifference on the part of the [municipality] in adequately training its law enforcement officers, and (3) [that] the inadequate training actually caused a deprivation of [the plaintiff's] constitutional rights." *Merritt v. Cnty. of L.A.*, 875 F.2d 765, 770 (9th Cir. 1989). In turn, these elements may be shown through a "pattern of tortious conduct by inadequately trained employees" or "a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407–09 (1997).

Johnson's Complaint alleging these two theories is entirely conclusory. With regard to the first theory, Johnson alleges that HPD has either official or unofficial policies or customs of (i) using excessive force on detainees; (ii) allowing its officers and agents to abuse their authority over detainees; (iii) failing to provide medical assistance to detainees who have been beaten; (iv) failing to supervise, discipline, or investigate police misconduct; (v) failing to establish fair

11

and reasonable protocols for handling accusations of police misconduct; and (vi) condoning all of these policies or customs. *See* Complaint ¶¶ 73–79, 87, 89, 91. With regard to the second theory, Johnson alleges that HPD has failed to train, supervise, or discipline its officers in these same areas: (i) excessive use of force; (ii) abuse of authority; (iii) provision of medical assistance to injured detainees; and (iv) procedures for handling police misconduct. *See id.* These are conclusions, not facts. Nor is Johnson's unspecific reference to "the numerous lawsuits filed against HPD officers for excessive force used against suspects and detainees" helpful to his cause. *See id.* ¶¶ 73–74, 76–77.

      These conclusory allegations come nowhere near permitting the requisite inference that the City is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Johnson offers no allegations of "*repeated* constitutional violations for which [Mecham] w[as] not discharged or reprimanded," which could evidence a "widespread [or] well-settled practice or custom that constitutes a standard operating procedure" of the HPD. *See Gillette*, 979 F.2d at 1349 (emphasis added); *Hunter*, 652 F.3d at 1229; *Navarro*, 72 F.3d at 714 ("Proof of . . . isolated events is insufficient to establish custom."). In fact, Johnson does not offer a single other instance of such conduct by Mecham or any other officer, much less *repeated* instances, he does not explain how any other instance is related to what happened to him in August 2020, and he does not offer

any other instance that could serve as the basis for finding the existence of an unofficial policy or custom on which he relies.  Neither has Johnson pointed to any particular inadequate training program, any "*pattern* of tortious conduct," or any failure to equip officers with the tools and training they need in "*recurring* situations."  *See Merritt*, 875 F.2d at 770; *Brown*, 520 U.S. at 407–09 (emphasis added).  Both of his *Monell* theories, in other words, are grounded in nothing more than speculation and lack facial plausibility.

## CONCLUSION

For the reasons stated herein, the MTD, Dkt. No. 6, is GRANTED with leave to amend.  Counts 2–4 against the City are therefore DISMISSED WITHOUT PREJUDICE for failure to state a claim.  Moreover, at least until this Court is convinced that there is a viable constitutional claim against a properly served Defendant, the Court declines to exercise supplemental jurisdiction over Johnson's state law-based claims, Counts 5–8.[7]  *See Walter v. Drayson*, 496 F. Supp. 2d 1162, 1178–79 (D. Haw. 2007) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

---

[7] While asking that the Court decline to exercise supplemental jurisdiction over the *other* state law-based claims, the City simultaneously asks the Court to decide that Johnson's negligence claim and any related *respondeat superior* claim against the City fail as a matter of law.  Dkt. No. 6-1 at 13–15 (referring to Counts 5 and 8).  In the absence of any viable federal law claim, the Court exercises its discretion to decline supplemental jurisdiction over *all* state law-based claims and, thus, declines to address any such claim on the merits.

Johnson may have until **March 15, 2023** to amend his Complaint to cure the deficiencies set forth herein.  Failure to file an amended complaint by that date will result in the automatic dismissal of the relevant claims without prejudice and without additional notice.  Further, any amended complaint must stand alone.  That is, it must re-assert any previous allegations and claims in a single, new, comprehensive filing.  If Johnson fails to file an amended complaint by March 15, 2023 and/or serve Mecham by the deadline previously extended by the Magistrate Judge, *see* Dkt. No. 18, this case will be remanded to the Circuit Court of the First Circuit, State of Hawaiʻi.[8]

IT IS SO ORDERED.

DATED: February 14, 2023 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge

---

*Marquis Johnson v. City and County of Honolulu, et al*; Civil No. 22-00447 DKW-RT; **ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

---

[8] On December 13, 2022, the Court directed Johnson to serve the summons and Complaint on Mecham within 30 days if he intended to proceed against Mecham.  Dkt. No. 13.  On January 11, 2023, Johnson moved for 90 additional days in which to serve Mecham, Dkt. No. 17, and the assigned Magistrate Judge granted the request for good cause.  Dkt. No. 18.  Johnson thus has until April 11, 2023 to serve Mecham and to file proof thereof.  *See id.*